**Vincent M. DUDLEY, as Executor of the Estate of Robert J. Patton, and Rose Marie Patton, Plaintiffs–Appellees,**

v.

**PENN–AMERICA INSURANCE COMPANY, Defendant–Appellant.**

**Docket No. 01–9215.**

United States Court of Appeals, Second Circuit.

Submitted: Feb. 5, 2002.

Decided: Dec. 5, 2002.

---

Robert A. Crawford, Knoer & Crawford, Buffalo, NY, for Plaintiffs–Appellees.

Christopher F. Smith, Fixler & Associates, Elmsford, NY, for Defendant–Appellee.

Before: POOLER and SOTOMAYOR, Circuit Judges, and KAPLAN, District Judge.*

POOLER, Judge.

Plaintiffs–Appellees Vincent M. Dudley, et al. ("Dudley") moved to dismiss as untimely the appeal of defendant-appellant Penn–America Insurance Co. ("Penn–America"). As is sometimes the case, the procedural background of this case in the district court somewhat complicates the simple and straightforward answer to Dudley's motion. Our path to the simple

solution also is obscured by Dudley's citation to our decision in *Hodge v. Hodge*, 269 F.3d 155 (2d Cir.2001) (per curiam), which seems to support its position even though that result would be in direct contravention of the Federal Rules · of Appellate Procedure. In the end, however, simplicity prevails, the rules are plain, and we deny Dudley's motion.

## BACKGROUND

On October 5, 2000, Dudley filed a lawsuit in federal court based on diversity jurisdiction. Dudley alleged that Penn–America failed to pay it pursuant to a New York State court judgment entered against Penn–America's insured, a bar called 24K Solid Gold, Inc. In the underlying state court lawsuit, Dudley sued 24K Solid Gold, which ·defaulted, and the bar's insurer, Penn–America, improperly disclaimed liability. As a result, Dudley alleged that Penn–America was "liable for payment of the judgment in the amount of $187,505.01, plus the appropriate statutory interest calculated from August 10, 2000." In the complaint's request for relief, plaintiff again asked the court to award $187,505.01 plus accrued interest and costs.

Penn–America · answered the federal complaint and defended the lawsuit. On December 12, 2000, Dudley moved for summary judgment. In the Notice of Motion for Summary Judgment, plaintiff asked the court to find, among other things, that Penn–America was liable for payment of the underlying state court judgment and interest accrued on that judgment from August 10, 2000. In a written decision and order, the district court granted plaintiff's motion and held that "plaintiffs are entitled to summary

---

* The Honorable Lewis A. Kaplan of the United States District Court for the Southern District of New York, sitting by designation.

judgment" because Penn–America failed to comply with New York State insurance law in disclaiming liability. The district court entered judgment on August 24, 2001 (the "Original Judgment"). Penn–America did not file a notice of appeal at that time. However, fewer than 10 business days later, on September 4, 2001, Dudley filed a motion for "Summary Judgment and Entry of Money Judgment" in which it asked the district court "[i]n furtherance of [its] prior decision," to enter a money judgment against Penn–America in the amount of the underlying $187,505.01 judgment plus New York statutory prejudgment interest through August 30, 2001, of $16,921.68 plus additional statutory prejudgment interest of $50.40 "for those days elapsing between August 30, 2001 and the date of entry of judgment." Dudley's motion did not cite the procedural rule under which plaintiff sought relief. Although Penn–America asked for additional time to respond to the motion, it failed to do so.

In a written decision dated September 26, 2001, the district court granted Dudley's motion in its entirety. It considered the motion as one filed pursuant to Fed. R.Civ.P. 60(a) to correct a clerical mistake arising from oversight or omission. Importantly, the district court held that "[i]t was the court's clear intention at the time it filed its Decision and Order granting plaintiffs summary judgment, that *all* of the relief sought by plaintiffs, including that the court find (1) that the Penn–America disclaimer letter was invalid; (2) that Penn–America was liable for payment of the judgment as entered in the New York State Supreme Court; and (3) that Penn–America was liable for interest accrued on said judgment from August 10, 2000, be granted." The district court directed the clerk of the court to amend the final judgment in the case to include the entry of a money judgment against Penn–America.

The clerk entered the order to amend the judgment on September 26, 2001 (the "Amended Judgment") but never entered a separate amended judgment. Penn–America then filed a notice of appeal on October 12, 2001, from the district court's August 24, 2001, decision and order, the Original Judgment, and the Amended Judgment. Penn–America subsequently posted a supersedeas bond in the district court. On October 19, 2001, Penn–America filed an amended notice of appeal to include the district court's order awarding Dudley $150 in costs.

By a notice of motion filed on December 26, 2001, Dudley moved in this court to dismiss Penn–America's appeal as untimely because defendant filed its notice of appeal in district court more than 30 days after entry of the district court's Original Judgment. Penn–America opposed the motion, which we considered on submission.

## DISCUSSION

Dudley contends that we lack jurisdiction to hear Penn–America's appeal because Penn–America filed its notice of appeal more than 30 days after the entry of the Original Judgment and "[d]efendant's time for filing a notice of appeal was not extended pursuant to Fed. R.App. P. 4(a), nor otherwise." Specifically, Dudley argues that because the Amended Judgment made no substantive changes to nor resolved any genuine ambiguities in the Original Judgment, it was a clerical correction with no tolling effect on the time for filing a notice of appeal. Dudley relies on our decision in *Hodge v. Hodge,* 269 F.3d 155 (2d Cir.2001).

Penn–America responds that the district court erred in characterizing the Amended Judgment as having made a clerical correction under Rule 60(a) because it con-

tained substantive changes requiring factual determinations and affecting the parties' rights in its award of a money judgment and prejudgment interest. Penn–America claims that the district court should have treated Dudley's motion under Fed. R.Civ.P. 59(e), which concerns motions to alter or amend judgments. Penn–America notes, however, that regardless of whether Dudley's motion was under Rule 59(e) or Rule 60(a), Fed. R.App. P. 4(a)(4)(A)(iv) or (vi) extended Penn–America's time to file a notice of appeal.

■ We conclude that the plain language of the Federal Rules of Appellate Procedure compels us to find that Penn–America's notice of appeal was timely. In general, a party must file its notice of appeal "within 30 days after the judgment or order appealed from is entered." Fed. R.App. P. 4(a)(1)(A). However, some motions have the effect of tolling this 30–day period. Under Fed. R.App. P. 4(a)(4)(A), "[i]f a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." The rule then lists six kinds of motions. Relevant to this appeal is subsection (iv), which concerns a motion "to alter or amend the judgment under Rule 59," and subsection (vi), which concerns a motion "for relief under Rule 60 if the motion is filed no later than 10 days ... after the judgment is entered." Subsection (vi) calculates the 10–day period pursuant to Fed.R.Civ.P. 6(a), which excludes weekends and legal holidays for counting periods of fewer than 11 days.

There is no dispute that Dudley filed its motion within 10 business days of the entry of the Original Judgment. Dudley did not indicate under what Rule of Civil Procedure it moved, but the district court construed it as a Rule 60(a) motion. Because Dudley made this Rule 60(a) motion within 10 business days of the entry of the Original Judgment, subsection (vi) applied to toll the time for filing a notice of appeal until the district court disposed of Dudley's motion, which occurred with the entry of the Amended Judgment on September 26, 2001. Thus, Penn–America had 30 days from September 26 in which to file a notice of appeal, and its October 12, 2001, notice of appeal was timely.

■ We hold that the district court correctly construed Dudley's motion as one made pursuant to Rule 60(a). The Amended Judgment did not affect substantive rights. It merely corrected a judicial oversight, namely the district court's failure to include the monetary award in the Original Judgment. Dudley's federal complaint was based exclusively on an insurance contract and sought only damages in a liquidated sum—the amount of the New York state court judgment—plus prejudgment interest, to which plaintiff was entitled as a matter of right pursuant to N.Y. C.P.L.R. § 5001. Calculation of prejudgment interest was purely mechanical because New York law set the interest rate and the time period. N.Y. C.P.L.R. §§ 5001(b), 5004. Moreover, Dudley's pleadings and summary judgment motion papers consistently requested that monetary relief. Therefore, when the district court granted Dudley summary judgment, it necessarily held that Dudley was entitled to damages in the amount of $187,505.01 plus prejudgment interest at the statutory rate. The district court made this previously held intention explicit in its order granting Dudley's motion.[1]

---

1. The concurrence argues that the district court was making substantive decisions in its

calculation of prejudgment interest in the Amended Judgment that were not apparent in

Thus, this is not a case like *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir.1994), where we held that the district court could not use Rule 60(a) to award prejudgment interest when there was no prior argument regarding a party's right to the interest and the district court was unaware of any request for pre-decision interest. Here, we have a situation where "the absence of an award of pre-decision interest in a judgement ... fail[ed] to reflect the actual intention of the court," so it properly is "correctable under Rule 60(a)." *Id.* (citing *In re Frigitemp Corp.*, 781 F.2d 324, 327 (2d Cir.1986)). We need look no further than Dudley's consistent, detailed requests for prejudgment interest, the fact that he was entitled to it as a matter of law, and the district court's own words that it intended to include the award in its Original Judgment as justification for our conclusion. *See Frigitemp*, 781 F.2d at 327–28 (noting that Rule 60(a) is the proper vehicle for correcting a judgment in order to provide an award of prejudgment interest where, among other things, governing law would make the interest award automatic or the district court clearly intended to make the interest award in its prior order).

We note that it makes no practical difference in this case whether the district court construed Dudley's motion under Rule 60(a), as it of course did, or under Rule 59(e) as seeking an alteration or amendment to a judgment, or under Rule 60(b) as seeking relief from a mistaken judgment. *Cf. Frigitemp*, 781 F.2d at 328 (noting that while plaintiff's motion for an amended judgment to add prejudgment interest was improper under Rule 60(a) based on the facts, it successfully could have moved under Rule 59(e) or Rule 60(b)). Dudley's motion met the time constraints of each provision. A timely motion under any of these provisions that also meets applicable time constraints of Rule 4 resets the time to file a notice of appeal to run from the entry of the order disposing of the motion. Fed. R.App. P. 4(a)(4)(A). The clear and plain language of the rule specifically lists motions "to alter or amend the judgment under Rule 59," *id.* 4(a)(4)(A)(iv), or motions "for relief under Rule 60," *id.* 4(a)(4)(A)(vi), as motions that reset the time within which to appeal. Moreover, it makes no distinction between Rule 60(a) and Rule 60(b) motions.

Finally, we must reconcile the plain and clear language of Fed. R.App. P. 4(a)(4)(A)(vi) with our statement in *Hodge* that "a motion under Rule 60(a) does not start anew the time for filing a notice of appeal." *Hodge*, 269 F.3d at 158. *Hodge* was a case about the effect of a Rule 60(a) motion on the timeliness of "postjudgment motions," not notices of appeal. Moreover, the cases *Hodge* cited in support of its broad statement about the effect of a Rule 60(a) motion on the time for filing a notice of appeal concerned situations that did not conflict with the plain language of Fed. R.App. P. 4(a)(4)(A)(vi).

In *Cody, Inc. v. Town of Woodbury*, 179 F.3d 52, 55–56 (2d Cir.1999) (per curiam), we simply held that a district court could not issue a second, identical judgment for the purpose of restarting a party's time for

the Original Judgment. We disagree. As noted, the Original Judgment granted the relief requested in the complaint, which included calculation of prejudgment interest from August 10, 2000, and the Amended Judgment merely confirmed and executed the monetary award. It does appear that the district court in its Amended Judgment made a mistake by calculating interest from August 30 instead of August 10 as it had stated in the Amended Judgment. Because plaintiff never sought to correct this mistake, it is irrelevant, and even the concurrence says its point is "not to question the merits of the district court's decisions regarding prejudgment interest."

filing an appeal. Importantly, *Cody* involved a Rule 60(b) motion filed more than 10 days after entry of judgment, and *Cody* explicitly acknowledged that the appellant could have taken advantage of the tolling mechanism in Fed. R.App. P. 4 if it had filed its motion within 10 days. *Id.* at 56. In *Farkas v. Rumore,* 101 F.3d 20, 22 (2d Cir.1996) (per curiam), we held that a second judgment that was identical in its dismissal of two counts but merely sought to restore the case number to the docket for an unrelated reason did not restart the time for filing a notice of appeal. No Rule 60 motion was involved. The general proposition that subsequent judgments do not start anew the time for filing a notice of appeal does not override the specific language of Fed. R.App. P. 4(a)(4)(A)(vi), which only concerns Rule 60 motions filed within 10 days of an original judgment. Thus, the language in *Hodge* that Dudley quoted to support its position lacks force on the facts before us, and that case does not purport to overrule the Federal Rules of Appellate Procedure.

## CONCLUSION

For the forgoing reasons, we deny Dudley's motion to dismiss as untimely the appeal of Penn–America Insurance Co.

SOTOMAYOR, Circuit Judge, concurring in the judgment.

The majority today undertakes to decide an important issue of appellate procedure which, in my opinion, is neither appropriate nor necessary to decide. Having undertaken that task, moreover, they have, in my view, decided the question incorrectly. Therefore, although I agree that the instant appeal is timely and that the majority has correctly denied the motion to dismiss, I concur only in the judgment.

The important issue improvidently decided today by the majority is that a motion under Fed.R.Civ.P. 60(a) serves to toll the time for filing a notice of appeal under Fed. R.App. P. 4(a)(4). Not only is the language of Rule 4 far from plain in dictating this result, but the history of the rule and the logical consequences of the majority's reading dictate precisely the opposite result.

The reason that the majority's step is neither appropriate nor necessary is that the original order entered on August 24, 2001 (the "August order")—which stated only that "Penn–America's failure to comply with the provisions of New York State Insurance Law Section 3420(d) constitutes waiver of the Liquor Liability Exclusion and plaintiffs are entitled to summary judgment"—neither constituted a final judgment for purposes of appellate jurisdiction nor satisfied the separate-judgment rule of Fed.R.Civ.P. 58. Indeed, it is questionable whether Rule 58 has yet been satisfied. It is thus inappropriate to decide whether the time for filing the notice of appeal was "tolled" by the request for the money judgment because that time did not begin to run, if at all, until the entry of the court's order on September 26 (the "September order"), which directed the clerk to "amend the final judgment in this case to include the entry of money judgment against defendant Penn–America Insurance Company in the amount of [$205,628.67]." Moreover, even if these requirements for beginning the appeals clock had been satisfied in August, the district court's September order cannot possibly be considered a mere clerical adjustment to its August one because the district court had not rendered a judgment with respect to prejudgment interest in August. Thus, whatever the plaintiffs' motion for entry of money judgment may have been, it is clear that it was *not* a motion under Rule 60(a). It is therefore

unnecessary to decide whether such a motion is a Rule 4 tolling motion.

### I. Time to file a Notice of Appeal

Fed. R.App. P. 4(a)(1) specifies that the 30– or 60–day time period for filing a civil appeal runs from the time "the judgment or order appealed from is entered." (In the interest of simplicity, I will refer only to judgments rather than any other type of appealable decision, as only the former are at issue in this case.) Entry of judgment entails two separate acts, one judicial and one ministerial. First, the court must render a final, appealable judgment. Second, that judgment must be set out in a separate document and entered on the court docket. Neither of these conditions had been satisfied in August of 2001, and therefore the time for filing a notice of appeal had not yet begun to run when the plaintiffs filed their September motion for a money judgment.

The first requirement—that the court render a final judgment—is a necessary predicate for invoking our jurisdiction under 28 U.S.C. § 1291. Where, as here, a plaintiff seeks relief other than purely declaratory, a decision as to the defendant's liability that makes no award of relief (monetary, injunctive, attorney's fees, etc.) is not appealable under § 1291. *See Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *see also Cooper v. Salomon Bros., Inc.,* 1 F.3d 82, 84–85 (2d Cir.1993) (where "only liability has been determined" with no assessment of damages, decision is not final for purposes of § 1291); *EEOC v. Joint Apprenticeship Comm.,* 895 F.2d 86, 89 (2d Cir.1990) (order not final under § 1291 where "it addressed only the issue of liability and did not fully adjudicate the claims in the case."); *see also Franklin v. District of Columbia,* 163 F.3d 625, 629 (D.C.Cir.1998) ("In damage and injunction

actions, a final judgment in a plaintiff's favor declares not only liability but also the consequences of liability—what, if anything, the defendants must do as a result."). The determination of whether a final judgment has been rendered is made by examining the record of the case both for the necessary elements of such a judgment (i.e., an award of relief) and for the court's intent that its ruling represent the final disposition of the case. *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 387, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (decision is final where "the District Court clearly evidenced its intent that the opinion and order from which an appeal was taken would represent the final decision in the case"); *cf. United States v. F. & M. Schaefer Brewing Co.,* 356 U.S. 227, 232, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958) ("While an opinion may embody a final decision, the question whether it does so depends upon whether the judge has or has not clearly declared his intention in this respect in his opinion. Therefore, when, as here, the action is for money only … it is necessary to determine whether the language of the opinion embodies the essential elements of a judgment for money and clearly evidences the judge's intention that it shall be his final act in the case.").

No such evidence of a final decision is present in the record in this case. There is nothing in the district court's summary judgment order which states that it is awarding money damages, and no mention of the amount beyond a reference in the factual recitation to the state-court judgment. Nor (even assuming the foregoing would suffice) is there anything in the record which indicates, as of the August order, that the court had expressed its intention that granting summary judgment to the plaintiffs would necessarily mean an award of money damages or any particular amount. Moreover, it is clear that the plaintiff-appellants (who are moving to dis-

miss this appeal) did not think the court had rendered a final judgment: counsel for plaintiffs submitted an affidavit in support of their motion for a money judgment which stated that the original summary judgment motion had "sought a declaration with regard to the applicability of a policy of insurance" and that "the relief requested herein simply awards a money judgment consistent with the declaratory relief previously awarded, and results in a full and final decision which defendant may appeal, should it wish to do so."

The fact that the district court, in its subsequent award of a money judgment, stated that "[i]t was the court's clear intention at the time it filed its Decision and Order granting plaintiffs summary judgment, that *all* of the relief sought by plaintiffs, including [declaratory relief, money damages, and prejudgment interest] be granted," does not change this conclusion. While it is certainly true that we accord great deference to a district court's interpretation of its own orders, *see Truskoski v. ESPN, Inc.,* 60 F.3d 74, 77 (2d Cir. 1995), that deference does not permit the district court, *post hoc,* to add provisions to an order that simply were not there originally. *See County of Suffolk v. Alcorn,* 266 F.3d 131, 141 (2d Cir.2001).

Nor do I understand the district court to be interpreting its prior order; the more plausible reading of the above-quoted language from the September order is that the court *intended* to award money damages in its August order (but, by implication, did not). Rendition of judgment, however, is not accomplished merely by the district judge's unstated intentions. A court renders judgment by *pronouncing* that intention or otherwise making it evident in the record. *See Bankers Trust,* 435 U.S. at 387, 98 S.Ct. 1117 (finding a final decision where the district court "clearly *evidenced* its intent"); *The Wash-*

*ington,* 16 F.2d 206, 208 (2d Cir.1926) (" 'Rendition' of judgment means the 'annunciation or declaring of the decision of the court' ...."). Whatever the district court intended with respect to money damages, it not only failed to make that intent "clear," it gave no indication of that intent whatsoever. Accordingly, as the plaintiffs recognized at the time, the August order was not a final, appealable judgment.

Even if it were, the second requirement for beginning the time to file a notice of appeal was not satisfied. Rule 58 of the Federal Rules of Civil Procedure requires that "[e]very judgment shall be set forth on a separate document" and that "[a] judgment is effective only when so set forth ...." The purpose of the separate-judgment rule, first enacted in 1963, is to "clarify when the time for appeal ... begins to run," *Bankers Trust,* 435 U.S. at 385, 98 S.Ct. 1117, and to eliminate the "considerable uncertainty over what actions of the District Court would constitute an entry of judgment, and occasional grief to litigants as a result of this uncertainty," *United States v. Indrelunas,* 411 U.S. 216, 220, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973). We have consistently held that " 'the time for appeal does not start running until this separate document is entered.' " *Selletti v. Carey,* 173 F.3d 104, 110 (2d Cir.1999) (quoting *Cooper v. Town of East Hampton,* 83 F.3d 31, 33 (2d Cir.1996)).

By its terms, the rule requires that the judgment be laid out in a document that is " 'separate from any judicial memorandum or opinion.' " *Cooper,* 83 F.3d at 34 (quoting *Axel Johnson, Inc. v. Arthur Andersen & Co.,* 6 F.3d 78, 84 (2d Cir.1993)). In addition, the rule in this circuit is that this document must be labeled a "judgment." *Id.* Unquestionably, the August "judgment" filed in the district court satisfied both of these requirements:

Just as unquestionably, however, not every piece of paper labeled a "judgment" satisfies Rule 58. Although this circuit has not specifically addressed the question, the generally accepted view as to the minimum requirement for a judgment is that "[i]t must be a self-contained document, saying who has won and what relief has been awarded, but omitting the reasons for this disposition, which should appear in the court's opinion." *Otis v. City of Chicago*, 29 F.3d 1159, 1163 (7th Cir.1994); *see also Am. Interinsurance Exch. v. Occidental Fire & Cas. Co. of N. C.*, 835 F.2d 157, 159 (7th Cir.1987) ("Under Fed.R.Civ.P. 58 the judgment must be self-contained and complete. It must describe the relief to which the prevailing party is entitled and not simply record that a motion has been granted."); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2785 (2d ed. 2002) ("On the better view, the separate judgment required by the 1963 amendment should be self-sufficient and should not merely incorporate other documents by reference . . . .").

Consistent with this view, I believe the separate-document rule requires that one be able to discern the elements of a final, appealable judgment from the face of the separate document (labeled "Judgment"), without reference to any court papers or pleadings. As indicated earlier, to satisfy this requirement, a judgment therefore must indicate the disposition of the plaintiff's claims for relief (including, in the appropriate case, a statement that the plaintiff shall take nothing). *Cf. Kidd v. District of Columbia*, 206 F.3d 35, 37 (D.C.Cir.2000) (Rule 58 satisfied by "a single document that disposes of all remaining claims"). Applying that standard in the instant case, it is indisputable that the August "judgment" said nothing whatsoever about the plaintiffs' claim for money damages, or any type of relief for that matter (except perhaps declaratory). In my view, therefore, the separate-document rule was not satisfied, and the time for filing a notice of appeal had not begun to run.

In fact, there is an open question as to whether this requirement has *ever* been satisfied in this case. The district court, in response to the plaintiffs' motion for a money judgment, issued an order explaining in some detail its previous order and its decision with respect to prejudgment interest. The order concluded by directing the clerk to amend the judgment to reflect the total amount due the plaintiffs from the defendant. However, there has yet to be any separate document entered on the court docket which indicates this relief. It is my view, therefore, that the time for filing a notice of appeal may still not have begun to run. Because it is clear from the record, however, that as of the September order the requirements for a final, appealable order had been met, and because the parties are free to waive the separate-document requirement, *see Bankers Trust*, 435 U.S. at 387–88, 98 S.Ct. 1117; we are not deprived of jurisdiction to hear this case. *See Selletti*, 173 F.3d at 109–10.

## II. The Scope of Rule 60(a)

The majority appears to assume that, because the August order granting plaintiffs' motion for summary judgment indicates that the plaintiffs were seeking money damages in the amount of the underlying state-court judgment, it is reasonable to infer from the district court's grant of summary judgment that this necessarily entailed a grant of money damages in that amount. As stated above, I disagree with that conclusion. However, even were I to accept that assumption, along with the further assumption that I am incorrect about the separate-document

rule requiring a judgment which indicates the relief to be awarded without reference to any other document, the majority still errs by suggesting that the plaintiffs' motion for a money judgment was a motion for a clerical correction under Fed. R.Civ.P. 60(a). That is because the August order granting summary judgment not only made no award of prejudgment interest, it did not even contain the information necessary to make the determination of how much (if any) prejudgment interest should be awarded.[1]

A motion to correct a clerical error under Rule 60(a) must seek to conform the written judgment to the judgment actually rendered by the court; it cannot seek to alter the substantive rights of the parties. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir.1994) ("An error in a judgment that accurately reflects the decision of the court or jury as rendered is not 'clerical' within the terms of Rule 60(a)."); *Bernstein v. Lefrak (In re Frigitemp Corp.)*, 781 F.2d 324, 327 (2d Cir. 1986) (correction under Rule 60(a) available where "the judgment simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated"). A Rule 60(a) motion is directed to errors or omissions in the essentially ministerial act of transcribing the court's rendered judgment into writing; it cannot serve to correct errors or omissions in the judicial act of rendering that judgment.

An award of prejudgment interest cannot be in any sense a "ministerial" act; the award must be rendered by the court.

This is so because it entails a decision on several factual and legal questions. First among these is the question of what law governs. The answer to this question certainly cannot be gleaned from the record in this case as of the August order. It is found neither in that order (which refers only to the plaintiffs' claim for "accrued interest") nor in the complaint (which refers only to the "appropriate statutory interest"). In this case, the district court ultimately (in its September order) decided that New York law governed—but clearly New York law does not govern prejudgment interest in *every* case. In other words, this determination required the court to decide a legal question, and there is absolutely no indication in the record prior to its September order what the answer to that question would be.

Likewise, the decision that prejudgment interest should be awarded under New York law—presumably on the ground that the damages awarded represented a "sum awarded because of a breach of performance of a contract," N.Y. CPLR § 5001(a)—was a legal decision not apparent in the pre-September record in this case.[2] Nor is there any indication in the record of what interest rate would apply before the September order.

Finally, and most importantly, the district court was required to determine the date from which interest would accrue, and on this point the record prior to the September order could have yielded several answers. The complaint asks for interest from August 10, 2000, which was the date up to which interest on the underlying tort

---

**1.** I am assuming that the award of prejudgment interest is not in itself a separate form of relief but rather part of an award of money damages.

**2.** Nor, given the fact that this is a direct action against an insurer for payment of an underlying personal injury claim, is the dis-

trict court's answer obviously correct. *See Campbell v. Metro. Property and Cas. Ins. Co.,* 239 F.3d 179 (2d Cir.2001) (holding prejudgment interest not available under CPLR § 5001 where plaintiffs sued tortfeasor's liability insurer to recover personal injury damages).

judgment had been awarded by the state court. As the district court's August order indicated, however, the actual judgment was not entered until August 30, 2000. Moreover, the defendant insurer was not served with notice of the judgment until September 5, 2000, and further (as acknowledged by the district court), the plaintiffs' cause of action under N.Y. Ins. L. § 3420(a)(2) did not give the plaintiffs a right to proceed against the insurer until "the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured"—i.e., October 5, 2000. Given CPLR § 5001(b)'s direction that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed," which of these four dates qualifies? (Even in the September order, it is unclear what the district court decided; it first stated that it had intended its August order to award interest from August 10, 2000, then proceeded to calculate it from August 30.)

I assume that the majority would grant that, if the district court had issued a final judgment in August awarding prejudgment interest from October 5, and then the plaintiffs filed a motion asking that the interest be awarded from August 30, that motion would not be a "clerical" correction under Rule 60(a). Clearly such a motion would be seeking to change the substantive rights of the parties. Can it be that the fact that the August order gave *no* indication of the date from which interest would be calculated somehow transforms that hypothetical motion into one that does not alter those substantive rights? Such a contention would be untenable.

The point here is not to question the merits of the district court's decisions regarding prejudgment interest, but rather to point out that (1) they were *decisions;* (2) the amount of prejudgment interest depended upon those decisions; and (3)

these decisions were not remotely evident on the record as it existed prior to September. That these decisions may have been relatively easy (although, as indicated, that is by no means clear), or even uncontested, does not mean that they were ministerial or that they had been made as of the August order.

The majority's distinguishing of our decision in *Paddington Partners* is not convincing. We held in that case that, even though the cross-plaintiff had included a claim for prejudgment interest in his cross-claim, the failure of the district court to award prejudgment interest in its award of damages on summary judgment was not a clerical error correctable under Rule 60(a), because the lack of the award was "an accurate reflection of the District Court's intentions at the time the Summary Judgment Motions were decided." *Paddington Partners*, 34 F.3d at 1132. We there noted the absence of any argument on summary judgment for prejudgment interest, an indication that supported the conclusion that the district court simply had overlooked the issue. Although I do not believe that this was crucial to our holding in *Paddington Partners*—in that, even if prejudgment interest had been argued for in that case, such argument could not have overcome the district court's failure to pronounce anything on that issue in the record—the fact is that there was likewise in the instant case no mention of prejudgment interest in the summary judgment arguments.

The majority distinguishes *Paddington Partners* with the rather conclusory statement that "[h]ere, we have a situation where 'the absence of an award of predecision interest in a judgment ... failed to reflect the actual intention of the court' ...." *Ante*, at 665–66. The majority bases this conclusion, first, on the alleged presence of "Dudley's consistent, detailed re-

quests for prejudgment interest." *Id.* Other than the complaint's request for interest at "the appropriate statutory rate," however, I see no other such requests, and certainly none that were "detailed" in the sense that they indicated an interest rate or a date from which the interest would run. At least, there is no such date mentioned in the plaintiffs' papers which is consistent with the date from which the district court finally determined interest should run. With respect to the majority's reliance upon "the district court's own words that it intended to include the award in its original judgment," *id.,* I find the district court's interpretation of its August order no more convincing on this point than I do on the issue of money damages.

Regardless of the merits of the foregoing arguments, however, *Paddington Partners* is clear, and indistinguishable, on the failure of the district court to specify in its August order the date from which prejudgment interest would run. In *Paddington,* the district court likewise failed to specify this crucial date, and we likewise noted there that the date was far from clear, because it was uncertain when the underlying cause of action had accrued. 34 F.3d at 1140–41. We ultimately concluded that "the absence of an award of pre-decision interest in the original Judgments was not a clerical error within the terms of Rule 60(a), because it could not be corrected without a finding of fact regarding the dates from which such interest should run." *Id.* at 1141. This statement is fully applicable to the district court's August order here. Consequently, the plaintiffs' motion for a money judgment, at least insofar as it sought an award of prejudgment interest, sought to alter the substantive rights of the parties as they existed as of the August order and therefore could not have been a motion under Rule 60(a).

## III. Fed.R.Civ.P. 60(a) and Fed. R.App. P. 4(a)(4)

Although, as already explained, I would not have reached the question of the tolling effect of a Rule 60(a) motion, the majority today decides otherwise, holding that such a motion, if filed within ten days of entry of judgment, serves to postpone the start of the 30– or 60–day time period for filing a notice of appeal until after the district court has disposed of the motion. This holding is neither compelled by (indeed, runs contrary to the better reading of) the language of the rules nor consistent with the pre–1993 case law which the 1993 Amendments to Appellate Rule 4 sought to codify. Moreover, this holding is unwise as a policy matter and has, I fear, great potential for mischief and abuse.

Before turning to the analysis of the language and history of Rule 4, however, I pause briefly to address the effect of our statement in *Hodge v. Hodge,* 269 F.3d 155 (2d Cir.2001), that "this Court ... has held ... that a motion under Rule 60(a) does not start anew the time for filing a notice of appeal." *Id.* at 158. I fully agree with the majority that this statement was a mischaracterization of our holdings in *Cody, Inc. v. Town of Woodbury,* 179 F.3d 52, 55–56 (2d Cir.1999), and *Farkas v. Rumore,* 101 F.3d 20, 22 (2d Cir.1996), both of which dealt with the effect of court-initiated clerical changes to judgments rather than changes made in response to a motion.[3] I further agree that

**3.** We have, however, indicated in *dictum* in at least one case that the 1993 amendments to Rule 4 only added motions under Rule 60(b). *See Jones v. UNUM Life Ins. Co. of Am.,* 223 F.3d 130, 137 (2d Cir.2000) ("FRAP Rule 4(a)(4) was amended in 1993 to add some Civil Rule 60(b) motions to the category of motions that automatically extend the time for appeal.").

this statement was *dictum* and does not control the result here, and—as a member of the *Hodge* panel—I most assuredly agree with the majority's statement that *Hodge* did not "purport to overrule the Federal Rules of Appellate Procedure." *Ante* at 667. This latter statement, however, begs the question, which is just what do the Federal Rules of Appellate Procedure require, and on that point I believe that, *dictum* or not, the statement in *Hodge* embodies the correct interpretation of those rules, not their "direct contravention." *Ante* at 663.

Beginning with the language of Rule 4, which the majority apparently deems dispositively "clear and plain," *see ante* at 666, I begin with the fact that the list of tolling motions refers not simply to a "motion under Rule 60" but rather to a "motion *for relief* under Rule 60." Fed. R.App. P. 4(a)(4)(A)(vi) (emphasis added). Presuming, as we must, that this prepositional phrase is not mere surplusage, *see, e.g.*, *Bell v. Reno*, 218 F.3d 86, 91 (2d Cir.2000) ("It is a well-known canon of statutory construction that, in general, a statute should not be construed so as to render a word or clause inoperative."), it has only two possible functions: (1) a qualifying function—i.e., it limits the scope of subdivision (vi) to only those motions under Rule 60 which may be deemed to be "for relief"; or (2) a descriptive one—i.e., it is simply describing the nature of motions under Rule 60. Two factors compel the former interpretation over the latter.

First, it is far from clear to me that attributing a purely descriptive function to the phrase—i.e., bereft of any *operative* effect—is consonant with the canon of construction previously cited. Put another way, the majority's apparent reading of subdivision (vi) as reaching *any* motion under Rule 60 would be achieved just as effectively by eliminating the phrase "for relief" completely. This construction renders those words superfluous and we "should hesitate so to treat" them. *Ratzlaf v. United States*, 510 U.S. 135, 140, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).

Second, comparison with the other provisions of Rule 4(a)(4)(A) strongly indicates that the phrase is intended to be limiting. Like Rule 60, which encompasses two distinct types of motion, Rules 50(b), 52(b), 54, and 59 each also refer to at least two types of motion,[4] and the references to each of these rules under Rule 4(a)(4)(A) include limiting phrases similar to the one in Rule 60. For example, Rule 4(a)(4)(A)(iii) does not reach all motions under Rule 54, only those "for attorney's fees."[5] Sound principles of statutory construction dictate that Rule 60 should be read in a like manner.

The next question, therefore, is whether a motion under Rule 60(a) is a motion "for relief," and I believe the answer is clearly that it is not. Although the heading of Rule 60 is "Relief From Judgment or Order," the text of the rule uses a form of the

---

**4.** Rule 50(b) refers to both a renewed motion for judgment as a matter of law and a motion for a new trial. Rule 52(b) refers to motions to amend or make additional findings of fact, with or without amending the judgment, and a motion for a new trial. Rule 54 contemplates motions for attorney's fees as well as motions for entry of final judgment as to fewer than all claims or parties. Rule 59 refers to motions for a new trial as well as motions to alter or amend the judgment.

**5.** Similarly, subdivisions (I) and (ii), in referring to Rules 50(b) and 52(b), respectively, exclude the alternative motions for new trials also found in those rules, leaving treatment of those motions to subdivision (v). Though arguably collectively covering all the motions under Rule 59, subdivisions (iv) and (v) each refer to only *one* of those motions—i.e., to alter or amend the judgment and for a new trial, respectively.

word "relief" only in subpart (b): "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding . . . ." Rule 60(a) consistently refers to the court's power, on motion or its own initiative, to "correct[ ]" "clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission . . . ."

Moreover, the granting of a motion under Rule 60(a), as opposed to 60(b), cannot be said to be "relieving" a party of anything. The heart of the distinction between an error that is correctable under Rule 60(a) and one that is not is that a correction under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the record to reflect the adjudication that was actually made. *See Frigitemp*, 781 F.2d at 327 (correction under Rule 60(a) available where "the judgment simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated"); *see also United States v. Kellogg (In re W. Tex. Mktg. Corp.)*, 12 F.3d 497, 504 (5th Cir.1994) ("[T]he relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule."); 12 James W. Moore, *Moore's Federal Practice*, § 60.02[1] (3d ed. 2002) ("Rule 60(a) may not be used to open up a judgment for the purpose of correcting substantive errors, or for the purpose of making rulings that should have been but that were not actually made."). A successful movant under Rule 60(a), therefore, has not been "relieved" of any of the obligations imposed on him or her by the *actual* adjudication of the court; the grant of such a motion is

merely a correction of the record to reflect that adjudication.

To be sure, the fact that the drafters of the 1993 Amendments to Rule 4 chose not to refer to a "motion for relief under Rule 60*(b)* " prevents this from being an absolutely clear case. As noted earlier, however, the references in Appellate Rule 4 to Rules 54 and 59 likewise are not restricted by inclusion of a subdivision, yet it is beyond dispute that they are not intended to cover all motions under those rules.

Any lingering doubt on the point is, in my view, erased by an examination of the history of Rule 4 and the policy considerations underlying it. Prior to 1993, Rule 4(a)(4)(A) did not include motions under Rule 60 in its list of motions that served to reset the running of the time for filing notice of appeal; just as they are today, however, motions to alter or amend a judgment under Rule 59(e) were included. Because of the similarities between motions under Rule 59(e) and Rule 60(b)—i.e., both motions seek a substantive change in the judgment—a difficulty arose in determining whether substantive attacks on a judgment were motions under Rule 59(e), which reset the appeals clock, or motions under Rule 60(b), which did not. Most circuits, including this one, resolved this difficulty by adopting a bright-line rule: Any *substantive* attack on a judgment that was filed within ten days of entry would be treated as a Rule 59(e) motion for purposes of Rule 4. *See Rados v. Celotex Corp.*, 809 F.2d 170, 171 (2d Cir.1986) ("Since the motion was served within ten days of the judgment and placed the correctness of the judgment in question, it was the functional equivalent of a motion to amend under Fed.R.Civ.P. 59(e), and should be treated as if it were a 59(e) motion for purposes of determining appellate jurisdiction."); *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 40 (2d Cir.1982)

(holding to same effect). Motions under Rule 60(a), however, being nonsubstantive, were not properly characterized as tantamount to Rule 59(e) motions and therefore did not serve to reset the time for appeal. *See Lieberman v. Gulf Oil Corp.*, 315 F.2d 403, 404 (2d Cir.1963); *see generally Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 137 (2d Cir.2000) (discussing history of amendment); Kenneth J. Servay, *The 1993 Amendments to Rules 3 and 4 of the Federal Rules of Appellate Procedure*, 157 F.R.D. 587, 600 (1994) (same).

When Rule 4(a)(4)(A)(vi), adding "motions for relief under Rule 60" to the list of tolling motions, was adopted in 1993, the Advisory Committee specifically stated that the amendment "comports with the practice in several circuits of treating all motions to alter or amend judgments that are made within 10 days after entry of judgment as Rule 59(e) motions for purposes of Rule 4(a)(4)." The committee cited to, among other cases, *Rados*. There is absolutely no indication that the committee intended to *extend* the list of tolling motions to include ones for nonsubstantive or clerical corrections under Rule 60(a), which had never theretofore had such effect.

Moreover, the negative policy effects of such an extension counsel strongly against assuming that it was intended. First, as this circuit has held, a nonsubstantive correction to a judgment undertaken by the district court *sua sponte* does not serve to restart the appeal clock. *See Farkas v. Rumore*, 101 F.3d 20, 22 (2d Cir.1996). The rationale of such a rule is that appellate time limits serve a strong interest in finality and swift resolution of cases and should begin to run whenever the lower court has actually and finally disposed of the case. As the Supreme Court stated,

> [T]he principle that litigation must at some definite point be brought to an end ... is a principle reflected in the statutes which limit our appellate jurisdiction to those cases where review is sought within a prescribed period. Those statutes are not to be applied so as to permit a tolling of their time limitations because some event occurred in the lower court after judgment was rendered which is of no import to the matters to be dealt with on review.

*FTC v. Minneapolis–Honeywell Regulator Co.*, 344 U.S. 206, 213, 73 S.Ct. 245, 97 L.Ed. 245 (1952). It is difficult to see how this principle applies with any less force when the nonsubstantive correction to a judgment is made pursuant to a motion rather than at the court's own initiative.

Second, it must be noted that Rule 60(a) allows corrections to be made not merely to judgments, but to "orders or other parts of the record" as well. The majority's holding—that all motions under Rule 60, if filed within ten days, serve to reset the appeals clock—necessarily therefore includes motions that are not even directed at the judgment on appeal. There is no principled way based purely on the language of Rule 4 to distinguish between such motions—the only possible distinction among various Rule 60 motions based on the text is, as discussed above, a distinction between those motions which are for "relief" and those which are not. I fear, therefore, that the majority's holding has significant potential for mischief in the hands of litigants who, for whatever reason, seek to delay appellate review by filing various Rule 60(a) motions to correct the record—motions which may not be frivolous but certainly do nothing to serve the interests of swift resolution of cases.

In sum, I believe the majority has unnecessarily and erroneously determined that a motion under Rule 60(a) serves to reset the time for filing a notice of appeal. Because, however, I believe that the time

for filing a notice of appeal did not begin to run, if at all, until the September judgment, I agree with the majority that the appeal was timely and therefore concur in the denial of the motion to dismiss.