EMPLOYERS MUTUAL CASUALTY COMPANY and Mutual Marine Office, Inc., As Attorney in Fact for Employers Mutual Casualty Company, Plaintiffs,

v.

KEY PHARMACEUTICALS, INC. and Schering–Plough Corporation, Defendants.

No. 91 Civ. 1630 (LBS).

United States District Court, S.D. New York.

May 8, 1995.

Dougherty, Ryan, Giuffra & Zambito, New York City, for plaintiffs (James E. Ryan and Robert J. Giuffra, of counsel).

Anderson Kill Olick & Oshinsky, P.C., New York City, for defendants (Avraham C. Moskowitz and Chaim B. Book, of counsel).

## OPINION

SAND, District Judge.

In an action before this Court brought in 1991, plaintiff insurance companies sought a declaratory judgment that they were relieved from any obligation to indemnify defendants for defendants' losses in a certain products liability litigation. Defendants counterclaimed, alleging that plaintiffs had breached the terms of the insurance policy held by defendants by disclaiming coverage groundlessly. In their request for relief, defendants asked the Court to dismiss plaintiffs' complaint and award them compensatory and punitive damages on their counterclaim, reasonable attorney's fees, costs and disbursements, and "such other and further relief as this court may deem just and proper." Answer ¶ 52. Defendants did not make any request in their answer, or in their motion papers, for pre-judgment interest on any award of damages they might receive. Nor did the Court ever consider or address the issue of pre-judgment interest *sua sponte*.

In a decision dated December 19, 1994 (the "December decision"), the Court granted summary judgment on defendants' counterclaim. *Employers Mutual Casualty Co. v. Key Pharmaceuticals, Inc.*, 871 F.Supp. 657, 674 (S.D.N.Y.1994). The Court directed the parties to submit an order setting forth the terms of defendants' recovery. *See id.* The order and judgment that was submitted provided for recovery by defendants of $1,175,-000.00, which sum represented plaintiffs' share of the losses covered by the insurance policy, plus the statutory rate of interest from the date of entry of the order and judgment. The order and judgment did not include an award of, or make reference to, pre-judgment interest.

Both sides have filed appeals from the December decision. Plaintiffs challenge the Court's award of summary judgment; defendants challenge the Court's denial of their claim for attorney's fees. In addition, defendants advise us that they have sought and received permission from the Court of Appeals to return to this Court to file a motion, pursuant to Rule 60, Fed.R.Civ.P., to correct the original judgment to include an award of prejudgment interest.

## DISCUSSION

The question presented by defendants' Rule 60 motion is not whether defendants are entitled to an award of pre-judgment interest had timely request been made. They are. New York law, which the Court found in the December decision to apply to the parties' various contract claims, *see* 871 F.Supp. at 664, is unmistakably clear on the issue:

> Interest *shall* be recovered upon a sum awarded because of a breach of performance of a contract.... Interest *shall* be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter *shall* be computed from the date incurred.
>
> .    .    .    .    .
>
> Interest *shall* be recovered upon the total sum awarded, including interest to verdict, report or decision, in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment. The amount of interest *shall* be computed by the clerk of the court and included in the judgment.

N.Y.Civ.Prac. L. & R. §§ 5001(a), (b), 5002 (McKinney 1992) (emphases added).[1]    An

---

1. As is clear from the quoted language, "prejudgment interest" under New York law includes both pre-decision interest (*i.e.*, interest from the date the cause of action arose to the date of the verdict, report or decision awarding damages) and post-decision interest (*i.e.*, interest running

award of interest is mandatory under these provisions, such that a court applying New York law has no discretion to decide not to award pre-judgment interest to a litigant who has successfully claimed a breach of contract. *Cantelmo v. Knaust*, 206 A.D.2d 743, 615 N.Y.S.2d 88, 90 (1994); *Pioneer Food Stores Cooperative, Inc. v. Brokerage Surplus Corp.*, 70 A.D.2d 542, 416 N.Y.S.2d 274, 275 (1979).[2]

■ Rather, the question presented by defendants' motion is whether this Court has the authority, at this point in the litigation, to award defendants the interest payments to which they would indisputably be entitled if timely request had been made. Defendants urge that we have such authority under either Rule 60(a) or (b)(1). We disagree, for the following reasons.

### A. *Rule 60(b)(1)*

Rule 60(b) provides that:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect....

Defendants argue that their failure to ask the Court for an award of pre-judgment interest before now was a mistake, or inadvertence, of the kind that is excusable under Rule 60(b)(1). They first point out, correctly enough, that the issue as to which state's law governed the parties' contract claims was a disputed one, with plaintiffs urging that New York law applied and defendants urging that Florida law applied. *See* 871 F.Supp. at 663–64. Defendants then say that even though the Court ultimately held that New York law governed the contract claims, they did not "focus" on their rights to pre-judgment interest under New York law because they did not believe that New York law properly applied. Defendants' Letter Brief to the Court, dated April 12, 1995 ("Defendants' Letter

Brief"), at 3. This "lack of focus" allegedly then caused defendants to fail to petition the Court for an award of pre-judgment interest in a timely fashion. *See id.*

There are two problems with defendants' account. The first is that Florida courts have long recognized that pre-judgment interest is an element of compensatory damages and that it is proper to award interest in contract actions at the legal rate from the date a debt became due. *Argonaut Insur. Co. v. May Plumbing Co.*, 474 So.2d 212, 214 (Fla.1985); *Parker v. Brinson Const. Co.*, 78 So.2d 873, 874–75 (Fla.1955). If defendants had in fact been focused on Florida law as a result of the parties' choice-of-law debate, one wonders why they failed to ask for pre-judgment interest under these well-established tenets of Florida law. It can also be wondered why, if open questions relating to choice-of-law obscured for defendants their entitlements under New York law, defendants did not assert those entitlements immediately upon learning of the Court's ruling that New York law applied (as they could and should have done pursuant to Rule 59(e) of the Federal Rules of Civil Procedure)[3].

Second, even if we were to accept defendants' explanation of their failure to ask the Court for pre-judgment interest, we do not believe that a party's "failure to focus," though perhaps otherwise understandable, amounts to the kind of exceptional circumstance that a party must show before it can obtain relief from a final judgment under Rule 60(b)(1). *See Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986) ("Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances."). Defendants were fully apprised of, and indeed vigorously litigated, plaintiffs' claim that New York law governed the contract causes of action. Nothing prevented them from considering the implications, for their own rights as well as for plaintiffs', of a

---

from the date of the verdict, report or decision to the date of entry of judgment).

**2.** In contrast, § 5001(a) provides that in actions of an equitable nature, "interest and the rate and date from which it shall be computed shall be in the court's discretion."

**3.** Rule 59(e) provides: "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed. R.Civ.P. 59(e).

choice-of-law ruling in plaintiffs' favor, and from making a request for pre-judgment interest "in the alternative".

In light of the foregoing, we conclude that defendants cannot obtain a correction of the judgment to include pre-judgment interest via Rule 60(b)(1).

### B. *Rule 60(a)*

■ We turn next to Rule 60(a). Rule 60(a) provides in relevant part that:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

■ As has often been noted, the purpose of Rule 60(a) is to afford courts a means of modifying their judgments in order to ensure that the record reflects the actual intentions of the court and the parties; the Rule is not meant to provide a way for parties to relitigate matters already decided, to charge errors in what a court has deliberately done, or to attempt to establish a right to relief which the court has not previously recognized. *See, e.g., Klingman v. Levinson*, 877 F.2d 1357, 1360–61 (7th Cir.1989); *In re Frigitemp Corp.*, 781 F.2d 324, 327 (2d Cir.1986). In short, "a motion under Rule 60(a) can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced." 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2854 (1973). The narrowness of the relief available under Rule 60(a) is directly related to the fact that the Rule contains no time bar. Because corrections may be made "at any time," they must be limited in scope in order to safeguard the important interests served by the finality of judgments. *See Frigitemp*, 781 F.2d at 326–27 (canvassing some of the ways in which the Federal Rules balance the value of finality with the value of accuracy in the adjudication of rights).

The Second Circuit Court of Appeals has recently addressed the scope of the errors correctable under Rule 60(a). In *Paddington Partners v. Bouchard*, 34 F.3d 1132 (2d Cir.1994), the court reviewed a situation much like the one before us: A party who was awarded summary judgment on a contract claim governed by New York law failed to ask for an award of pre-judgment interest, and neither the magistrate judge nor the district judge involved in the case considered the issue of pre-judgment interest prior to entry of the judgment, which was silent with respect to interest. On motion by the interest-entitled party, the magistrate judge corrected the judgment, pursuant to Rule 60(a), to include the requisite award of pre-judgment interest. The question before the Court of Appeals was whether the magistrate judge abused her discretion by so amending the judgment.[4]

The court first considered the circumstances under which an error relating to pre-decision interest can be corrected under Rule 60(a).

> To be correctable under Rule 60(a), the absence of an award of pre-decision interest in a judgment must fail to reflect the actual intention of the court. *Frigitemp*, 781 F.2d at 327; *Lee v. Joseph E. Seagram & Sons, Inc.*, 592 F.2d 39, 42 (2d Cir.1979). An error in a judgment that accurately reflects the decision of the court or jury as rendered is not 'clerical' within the terms of Rule 60(a). 781 F.2d at 328.

> Even if a plaintiff includes a demand for pre-decision interest in its complaint, '[s]uch requests obviously may be overlooked or denied, and the absence of a provision for [such] interest in any of the court's prejudgment orders is entirely consistent with the hypotheses that the court either was unaware of the request or intended simply to deny it. *In either case, the failure of [a] Judgment to award such interest is an accurate reflection of the court's decision,*' and hence can not be

---

4. We have simplified some of the procedural details of the *Paddington* case in order to highlight the relevant similarity between that case and this one (*i.e.*, the legal question presented by a party's invocation of Rule 60(a)).

corrected under Rule 60(a). *Id.* (emphasis added).

34 F.3d at 1140.

The court additionally held that an unintentioned failure to award pre-decision interest is not a "clerical error" within the meaning of Rule 60(a) if it cannot be corrected without a finding of fact as to the dates from which the interest should run. *See id.* at 1140–41. Given that the magistrate judge and district judge had evidently never considered the issue of pre-decision interest prior to entry of judgment, and that the absence of an award of pre-decision interest could not be corrected without further findings of fact, the court held that the magistrate judge had abused her discretion in amending the judgment under Rule 60(a) to include an award of pre-decision interest. 34 F.3d at 1140.[5]

The decision in *Paddington* dictates the result in this case. We cannot state that we ever actually intended to make an award of pre-decision interest in our order directing entry of judgment, or that we ever considered, much less resolved, the issue of pre-decision interest at any point during the course of our deliberations on the parties' summary judgment motions. The issue of pre-decision interest was simply not considered since the Court accepted the proposed judgment of the prevailing party, to which no objection was raised.[6]

Of course, had defendants petitioned for pre-decision interest prior to entry of judgment, we undoubtedly would have complied

with New York law and awarded it. But both the magistrate judge and the district judge in *Paddington* could presumably have said the same thing; yet, the magistrate judge in that case was not permitted to fix the judgment pursuant to Rule 60(a).

The fact that we would need to make further factual findings before we could make an award of pre-decision interest further precludes recourse to Rule 60(a) here. Like the judges in *Paddington,* we have never determined the date or dates from which pre-decision interest should run. To do so, we would have to determine "the earliest ascertainable date [defendants' contract] cause of action existed...." N.Y.Civ.Prac.L. & R. § 5001(b), which at this point we would surmise to be the date defendants were out-of-pocket as a result of plaintiffs' refusal to honor their indemnity commitments under the insurance policy.[7] While this date would probably be fairly easy to determine (since it might be provable on the basis of documentary evidence), it nonetheless does not lend itself to the kind of automatic or mechanical determination as does, say, the date of a person's death in a wrongful death action. *Compare Paddington,* 34 F.3d at 1141 ("The absence of an award of pre-decision interest in the original Judgments was not a clerical error within the terms of Rule 60(a), because it could not be corrected without a finding of fact regarding the dates from which such interest should run") *with Hegger v. Green,* 91 F.R.D. 595, 597–98 (S.D.N.Y.1981) (cor-

---

**5.** The *Paddington* court upheld the magistrate judge's amendment of the judgment insofar as it granted the interest-entitled party post-decision interest. *See* 34 F.3d at 1141–42. The court reasoned that because New York law requires the clerk of the court to calculate post-decision interest "automatically", *see* N.Y.Civ.Prac.L. & R. § 5002, and because the calculation can be done in a wholly mechanical way, with no discretion as to dates involved, the fixing of post-decision interest was a "ministerial oversight remediable as a clerical error under Rule 60(a)." *Id.* at 1141.

**6.** Defendants argue that we implicitly formed an intention to award pre-decision interest to the prevailing party by virtue of the fact that we decided that New York law governed the parties' contract claims. Defendants' Letter Brief at 4. However, "implicit intention" seems to fall short

of *Paddington*'s requirement that there must have been an "actual intention" on the part of the court to award pre-decision interest. We accordingly reject defendants' argument.

**7.** Paragraph 24 of the insurance policy issued by plaintiff Employers Mutual Casualty Company to defendant Key Pharmaceuticals provides that:

[Employer's] obligation to pay any ultimate net loss for any accident or occurrence falling within the terms of this policy of insurance shall not attach until the amount of applicable underlying limit has been paid by or on behalf of [Key] or until [Key's] obligation to pay such amounts shall have been finally determined, either by judgment against [Key] after the actual trial or by written agreement of [Key], the claimant, and [Employers].

Excess Liabilities Umbrella Policy for Employers Mutual Casualty Company, ¶ 24.

recting judgment in wrongful death action pursuant to Rule 60(a) where amount of pre-judgment interest was "mechanically ascertainable," requiring no "special finding ... by judge or jury as to the date from which the interest is to be calculated").[8]

We conclude that we are precluded by the holding in *Paddington* and the facts of this case from ordering an award of pre-decision interest. However, consistent with *Paddington, see supra* note 5, we hold that Rule 60(a) does allow us to amend the judgment to include an award of post-decision interest.

### CONCLUSION

For all of the foregoing reasons, defendants' motion under Rule 60 is denied insofar as it asks for an award of pre-decision interest. The motion is granted insofar as it asks for an award of post-decision interest. The Clerk of the Court is ordered to calculate the interest, according to the statutory rate contained in N.Y.Civ.Prac.L. & R. § 5004, from the date of the decision awarding defendants summary judgment (December 19, 1994) to the date of entry of judgment, and to add this amount to the judgment.

SO ORDERED.

---

8. Defendants suggest that we have already determined the "earliest ascertainable date" on which their contract cause of action existed by finding, in the December decision, that plaintiffs definitively disclaimed their indemnity obligations under the insurance contract in a letter to defendants dated March 6, 1991. *See* Defendants' Letter Brief at 4; 871 F.Supp. at 673–74. However, the date of plaintiffs' disclaimer of their contractual obligations is not necessarily the date on which defendants' cause of action first came into being. According to the relevant terms of the insurance policy, quoted above in note 7, plaintiffs' obligation to contribute to the settle-ment in the underlying litigation attached upon payment of all underlying insurance limits by or on behalf of defendant Key Pharmaceuticals. Yet the record, as understood by the Court in its December decision, shows that plaintiffs' disclaimer of its obligations occurred *prior to* the consummation of the settlement in the underlying litigation. *See* 871 F.Supp. at 673. However the issue would ultimately come out, we can at the very least say that some further findings of fact by the Court would be necessary to establish the date on which defendants' cause of action first arose.