**L.I. HEAD START CHILD DEVELOP-MENT SERVICES, INC., Paul Adams, derivatively on behalf of Community Action Agencies Insurance Group and as class representative of all other persons similarly situated, Plaintiffs,**

v.

**ECONOMIC OPPORTUNITY COM-MISSION OF NASSAU COUNTY, INC., Economic Opportunity Council of Suffolk, Inc., Yonkers Community Action Program, Inc., and Stella B. Kearse as Representative of the Estate of John L. Kearse, Deceased, Defendants.**

No. 00–CV–7394 (ADS).

United States District Court, E.D. New York.

July 25, 2013.

omitting information, is impermissible.

Welby, Brandy & Greenblatt, LLP by Alexander A. Miuccio, Esq., of Counsel, White Plains, NY, for Plaintiffs.

Mark E. Goidell, Esq., Garden City, NY, for Defendants.

Law Offices of Frederick K. Brewington by Frederick K. Brewington, Esq., of Counsel, Hempstead, NY, for Stella B. Kearse Representative of the Estate of John L. Kearse, Deceased.

Barry V. Pittman, Esq., Bayshore, NY, for the Defendant Economic Opportunity Council of Suffolk.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This litigation has a long and complicated history. On March 3, 2000, in a prior related lawsuit, the Court entered judgment in the amount of $497,736, plus interest, attorneys' fees, and costs, against Community Action Agencies Insurance Group ("CAAIG" or the "Plan"), a welfare benefits plan for employees of not-for-profit antipoverty agencies, and its trustees. The judgment was entered in favor of one of the participating agencies, the Plaintiff L.I. Head Start Child Development Services, Inc. ("LIHS"), on account of CAAIG's failure to refund reserves that had been set aside for LIHS after LIHS withdrew from the Plan.

In the present case, LIHS and Paul Adams, derivatively on behalf of CAAIG and as representative of a class of LIHS employees who were Plan participants, sued the administrators of CAAIG, contending that they breached their fiduciary duties to CAAIG under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., by failing to ensure that CAAIG had sufficient assets with which to satisfy the judgment. Following a bench trial, the Court agreed and entered judgment against the Plan administrators. The administrators appealed. The United States Court of Appeals for the Second Circuit affirmed. Presently pending before the Court is the Plaintiffs' renewed motion styled as one pursuant to Federal Rule of Civil Procedure ("Fed. R.Civ.P." or "Rule") 60(a) to correct the judgment. For the following reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

On July 8, 2009, the Court ruled that the Plaintiffs established that the Defendants violated their fiduciary duties under the provisions of ERISA by failing to make the necessary contributions to adequately fund CAAIG ("the Underfunding Claim"). (Docket Entry No. 192.) In addition, in the July 8, 2009 decision, the Court also ruled that the Plaintiff established that the Defendants EOC Nassau, EOC Suffolk, Yonkers CAP, and the Estate of John L. Kearse violated their fiduciary duties under the provisions of ERISA in failing to collect the delinquent contributions from EOC Suffolk ("EOC Suffolk Delinquency Claim" or "Delinquency Claim"). In this regard, judgment was rendered against EOC Nassau, Yonkers CAP, and the Estate of John L. Kearse, but, for some unexplained reason, not EOC Suffolk, in the sum of $9,000, with interest from June 30, 1998 to the date of the judgment.

In this July 8, 2009 decision, the Court also dealt with the enforcement of the prior judgment with regard to the debt owed to CAAIG by the other agencies. Specifically, there was the judgment en-

tered on May 25, 2000 in the sum of $802,831.57, which includes the principal sum of $497,736 plus prejudgment interest in the sum of $131,271.79, attorneys fees in the sum of $151,375 and costs in the sum of $22,448.78, against John L. Kearse and Alphonso Anderson as Trustees of CAAIG. The judgment creditors of CAAIG are the Plaintiffs in the present case, as a result of this May 25, 2000 judgment entered against CAAIG and the trustees. Accordingly, the court ruled that in its final order of judgment, it would include a directive that the Defendants in this action turn over to the Plaintiffs in the prior action, as judgment creditors, sums still owed pursuant to the May 25, 2000 judgment.

On October 20, 2011, in a further decision, the Court rendered a judgment in favor the Plaintiffs against all of the Defendants in the total sum of $832,945. The Court allocated the sum as against the three participating agencies as follows: judgment was rendered in favor of the Plaintiffs against the Defendant EOC Nassau in the sum of $652,198; judgment was rendered in favor of the Plaintiffs against the Defendant EOC Suffolk in the sum of $110,782; and judgment was rendered in favor of the Plaintiffs against the Defendant Yonkers CAP in the sum of $69,967; plus costs. (Docket Entry No. 244.) In addition, the Court awarded prejudgment interest under CPLR 5001 on the unpaid contributions at the federal interest rate on these amounts from the end of each fiscal year, commencing with the fiscal year that ended on August 31, 1995 and the subsequent years that ended on August 31, 1996, August 31, 1997, and June 30, 1998, when the Plan was terminated.

On April 24, 2012, 865 F.Supp.2d 284 (E.D.N.Y.2012) the Court issued a decision and order that awarded the Plaintiffs' counsel attorney's fees in the sum $490,807.53. (Docket Entry No. 232.)

The Clerk of the Court was directed to enter judgment for the full amount of the causes of action for the Plaintiffs, together with attorney's fees, in the sum of $490,807.53, in accordance with this decision and order, and prejudgment interest. After the entering of judgment, the Clerk of the Court was further directed to close this case.

On April 25, 2012, a judgment was entered in favor of the Plaintiffs and against all of the Defendants in the total sum of $832,945. In accordance with the Court's earlier decision, the award was allocated between the three participating agencies as follows: judgment was entered in favor of the Plaintiffs against the Defendant EOC Nassau in the sum of $652,198; judgment was entered in favor of the Plaintiffs against the Defendant EOC Suffolk in the sum of $110,782; and judgment was entered in favor of the Plaintiffs against the Defendant Yonkers CAP in the sum of $69,967. In addition, the Plaintiffs were awarded prejudgment interest as detailed in the October 20, 2011 Memorandum of Decision and Order, and the Plaintiffs were awarded attorney's fees in the amount of $490,807.53. Finally, the case was marked as closed.

On May 21, 2012, a notice of appeal was filed by the Defendants to the Second Circuit from the final judgment entered in this action on April 25, 2012. (Docket Entry No. 245.)

On June 1, 2012, pursuant to Rule 60(a), the attorney for the Plaintiffs moved to correct the judgment to include the following remedies: (1) to enter judgment in favor of the Plaintiffs against all of the Defendants, jointly and severally, for the sum of $9,000, with prejudgment interest from June 30, 1998 to April 25, 2012 in the sum of $3,583.65; (2) to direct that all of the Defendants in this action turnover to the Plaintiffs in the prior action, as judg-

ment creditors of CAAIG, pursuant to the May 25, 2000 judgment entered against the Defendants in the prior action, the unpaid balance due on the prior judgment in the sum of $717,271.00, with post-judgment interest at the federal rate from May 25, 2000; (3) to permit the Plaintiffs to recover the allowable costs of this action taxed against all of the Defendants; and (4) to conclude that all of the Defendants are jointly and severally liable to the Plaintiffs in the total sum of $832,945, with prejudgment interest in the amount of $42,564.48 from September 1, 1995 to June 30, 1998. (Docket Entry No. 247.)

On June 11, 2012, the Court signed an order to show cause submitted by Mark E. Goidell, Esq., attorney for the Defendants, requesting an order (1) staying enforcement of the judgment at issue and dispensing with a supersedeas bond; and (2) vacating restraining notices placed on the bank accounts of the Defendant EOC Nassau. (Docket Entry No. 251.) Then, on June 25, 2012, the Court stayed enforcement of the judgment pending the determination of the appeal, upon the additional terms and conditions set by the Court. The Court ordered that the restraints that were placed on the bank accounts of the Defendants were vacated and that any and all acts of the Plaintiffs, their attorneys, agents, or assigns and the Sheriff of the County of Nassau to issue or execute a restraint or to take any other action against the Defendants to enforce the judgment in connection with the underlying proceeding was stayed pending the determination of the appeal. Finally, the Court ordered that the Defendants and the non-party Community Economic Development Corporation were restrained and enjoined from conveying, transferring, encumbering, pledging, or otherwise disposing of any assets or interests in property, including but not limited to any right, title or interest in real property, other than in the regular course of business, pending the determination of the appeal. (Docket Entry No. 267.)

On March 12, 2013, the Court denied the Plaintiffs' Rule 60(a) motion as procedurally improper and without the permission of the Second Circuit. At that time, the Court specifically declined to consider the merits of the motion.

On March 13, 2013, the Second Circuit affirmed the April 25, 2012 judgment. The Defendants filed a petition for a panel rehearing or, in the alternative, for rehearing *en banc.* On April 16, 2013, the panel that determined the appeal and the active members of the Second Circuit denied the petition. The Second Circuit mandate was issued and filed with the Clerk of the Court on June 10, 2013.

On June 14, 2013, more than one year after the April 25, 2012 judgment was entered, the Plaintiffs renewed their motion styled as a Rule 60(a) motion to correct the judgment.

## II. DISCUSSION

■ Fed.R.Civ.P. 60(a) provides in relevant part that

> [t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice.

Fed.R.Civ.P. 60(a). Notably, Rule 60(a) "imposes no time limitations." *Truskoski v. ESPN, Inc.,* 60 F.3d 74, 77 (2d Cir. 1995).

■ "The general purpose of Rule 60(a) is to afford courts a means of modifying their judgments in order to ensure that the record reflects the actual intentions of the court." *Highland Capital Mgt., L.P. v. Schneider,* 2008 WL 3884363, at *14

(S.D.N.Y. Aug. 20, 2008) (internal quotation marks and citations omitted); *see also Dudley ex rel. Estate of Patton v. Penn–America Ins. Co.*, 313 F.3d 662, 665 (2d Cir.2002) (holding that where a party's motion seeking an amended judgment to include an award of prejudgment interest did not invoke a specific Federal Rule of Civil Procedure, the district court correctly construed it as a motion under Rule 60(a), since the amended judgment "did not affect substantive rights" but "merely corrected a judicial oversight, namely the district court's failure to include the monetary award in the Original Judgment").

▆▆▆ Rule 60(a) "permits the correction not only of clerical mistakes, but also of inadvertent errors arising from oversight or omission." *In re Marc Rich & Co. A.G.*, 739 F.2d 834, 836 (2d Cir.1984) (internal quotation marks and citation omitted). Thus, "[a] motion under Rule 60(a) is available only to correct a judgment for the purpose of reflecting accurately a decision that the court actually made." *Hodge v. Hodge*, 269 F.3d 155, 158 (2d Cir.2001) (internal quotation marks and citation omitted); *Pietras v. Bd. of Fire Comm'rs*, 94 CIV 0673(DRH), 2009 WL 1797135 (E.D.N.Y. June 24, 2009).

▆▆▆ The Second Circuit has explained that the "heart of the distinction between an error that is correctable under Rule 60(a) and one that is not is that a correction under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the record to reflect the adjudication that was actually made." *Dudley*, 313 F.3d at 675 (citation omitted). Rule 60(a) "is not meant to provide a way for parties to relitigate matters already decided, to change errors in what a court has deliberately done, or to attempt to establish a right to relief which the court has not previously recognized." *Peyser v. Searle Blatt & Co., Ltd.*, 2003 WL 1610772,

at *1 (S.D.N.Y. Mar. 24, 2003) (quoting *Employers Mut. Cas. Co. v. Key Pharms., Inc.*, 886 F.Supp. 360, 363 (S.D.N.Y.1995), *aff'd* 75 F.3d 815 (2d Cir.1996)).

The Second Circuit has taken a broad view of Rule 60(a), allowing modification of a judgment for the purposes of enforcement in *Robert Lewis Rosen Assocs., Ltd. v. Webb*, 473 F.3d 498 (2d Cir.2007). There, the district court's original order had confirmed an arbitration award that ordered payment of a sum certain, plus additional payments calculated as a fixed percentage of the losing party's future receipts from certain contracts. *Id.* at 500–01. The original court order confirmed the arbitration award and listed the sum certain, but "made no explicit mention of any sums due" on account of future receipts. *Id.* at 502. The prevailing party successfully enforced that judgment in the losing party's state to the extent of the sum certain. *See id.* The losing party obtained a judgment of satisfaction in his home state and then sought to discharge the original judgment at the issuing court. That court refused, issuing a supplemental judgment accounting for the sums that previously had been "contingent upon future [contracts] that had yet to mature." *Id.* at 506 n. 14. The Second Circuit held that "Rule 60(a) was an appropriate vehicle to correct the judgment … because there was no dispute over the dollar amount awarded by … the supplemental judgment." *Id.* at 505.

"Other circuits generally agree that Rule 60(a) relief is proper to the extent that it does not deviate from the original intent of the court." *Garamendi v. Henin*, 683 F.3d 1069, 1079 (9th Cir.2012). The Federal Circuit has stated: "Courts enjoy broad discretion to correct clerical errors in previously issued orders in order to conform the record to the intentions of the court and the parties." *Agro Dutch In-*

*dus. Ltd. v. United States,* 589 F.3d 1187, 1192 (Fed.Cir.2009) (emphasis added) (citing *Robert Lewis Rosen Assocs.,* 473 F.3d at 504–05 & n. 11). In that case, the Federal Circuit relied, in part, on Rule 60(a) to approve the trial court's correction of the effective date of an injunction because, although the date in the original injunction had been chosen deliberately, the intent of the injunction would have been better served by the corrected date. *See id.* at 1192–93.

In sum, then, Rule 60(a) allows a court to clarify a judgment in order to correct a "failure to memorialize part of its decision," to reflect the "necessary implications" of the original order, to "ensure that the court's purpose is fully implemented," or to "permit enforcement." "Rule 60(a) allows for clarification and explanation, consistent with the intent of the original judgment, even in the absence of ambiguity, if necessary for enforcement . . . this broad rule does not allow a court to make corrections that, under the guise of mere clarification, 'reflect a new and subsequent intent because it perceives its original judgment to be incorrect. Rather, the interpretation must reflect the contemporaneous intent of the district court as evidenced by the record.' " *Garamendi,* 683 F.3d at 1080 (9th Cir.2012), citing *Burton v. Johnson,* 975 F.2d 690, 694 (10th Cir. 1992) (citation omitted).

By contrast, Rule 59(e) of the Federal Rules of Civil Procedure governs motions to "alter or amend a judgment." Fed.R.Civ.P. 59(e). Courts have recognized three major grounds justifying reconsideration pursuant to Rule 59(e): "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992) (citations and internal

quotation marks omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Rafter v. Liddle,* 288 Fed.Appx. 768, 768–69 (2d Cir.2008) (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)). To invoke Rule 59(e) to alter or amend a judgment, the moving party must move "no later than 28 days after entry of judgment." Fed.R.Civ.P. 59(e); *see also* Local Civil Rule 6.3.

Finally, as an alternative to Rule 59(e), Rule 60(b) permits a court, in its discretion, to rescind or amend a final judgment or order in limited circumstances. First, the court may grant relief from a judgment involving "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1). Relief under Rule 60(b)(1) turns on equitable factors, notably whether any neglect was excusable. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 392, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Second, the court may grant relief where there is "newly discovered evidence" that the moving party could not have discovered through its exercise of due diligence. Fed. R.Civ.P. 60(b)(2). Third, the court may set aside a final judgment for fraud, misrepresentation, or other misconduct by an adverse party. *Id.* 60(b)(3). Specifically, the movant must show that "such 'fraud' prevented him or her from fully and fairly presenting his or her case," and that "the fraud is attributable to the party or, at least, to counsel." *Richardson v. Nat'l R.R. Passenger Corp.,* 150 F.R.D. 1, 7 (D.D.C.1993) (internal citations omitted). Fourth, the court may grant relief in cases in which the judgment is "void." Fed.

R.Civ.P. 60(b)(4). A judgment may be void if the court lacked personal or subject matter jurisdiction in the case, acted in a manner inconsistent with due process, or proceeded beyond the powers granted to it by law. *Eberhardt v. Integrated Design & Constr., Inc.,* 167 F.3d 861, 871 (4th Cir. 1999). Fifth, the court may grant relief if the "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed.R.Civ.P. 60(b)(5); *Twelve John Does v. District of Columbia,* 841 F.2d 1133, 1138 (D.C.Cir.1988) (noting that not all judgments having continuing consequences are "prospective" for the purposes of Rule 60(b)(5)). Sixth, the court may grant relief from a judgment for "any ... reason that justifies [such] relief." Fed.R.Civ.P. 60(b)(6). Using this final catch-all reason sparingly, courts apply it only in "extraordinary circumstances." *Pioneer Inv. Servs. Co.,* 507 U.S. at 393, 113 S.Ct. 1489.

█ A party proceeding under one of the first three reasons must file its Rule 60(b) motion within a "reasonable time," not to exceed one year after the judgment at issue. Fed.R.Civ.P. 60(c)(1). A party relying on one of the remaining three reasons may file its Rule 60(b) motion within a "reasonable time." *Id.* The party seeking relief from a judgment bears the burden of demonstrating that it satisfies the prerequisites for such relief. *See McCurry ex rel. Turner v. Adventist Health Sys./Sunbelt, Inc.,* 298 F.3d 586, 592 (6th Cir.2002).

With this framework in mind, the Court will now address, in turn, the Plaintiffs' multi-part motion.

#### A. *As to the $9,000 EOC Delinquency Award*

█ In the July 8, 2009 decision, the Court found that "the defendants' failure to collect the delinquent contributions from EOC Suffolk was a breach of their fiduciary duty to administer the Plan solely in the interest of its participants." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.,* 634 F.Supp.2d 290, 313 (E.D.N.Y.2009) *aff'd,* 710 F.3d 57 (2d Cir.2013). The Court then determined that "all defendants, including the late John L. Kearse, [we]re jointly and severally liable for the $9,000 plus prejudgment interest running from June 30, 1998 to the date of the judgment." *Id.* The Court specifically held that EOC Suffolk also breached its fiduciary duty to administer the Plan. However, for an unexplained reason, in the decretal paragraph, the Court rendered judgment against the defendants EOC Nassau, Yonkers CAP, and the Estate of John L. Kearse, but not EOC Suffolk, in the sum of $9,000, with interest from June 30, 1998 to the date of the judgment.

Furthermore, the final judgment entered on April 25, 2012 did not reflect the Court's determination regarding the award of $9,000 and prejudgment interest arising out of the Defendants' fiduciary failure to collect the delinquent contributions. In light of this discrepancy, the Plaintiffs request that the judgment be corrected pursuant to Rule 60(a) to reflect these determinations, and that the judgment should be further corrected to include the actual amount of prejudgment interest.

As an initial matter, the Defendants do not appear to dispute that the judgment entered on April 25, 2012 should have reflected the $9,000 award against all the Defendants. "This matter, though affecting the recovery amount, is but a loose end." *Orshan v. Macchiarola,* 105 F.R.D. 534, 540 (E.D.N.Y.1985). Accordingly, the Court grants that part of the Plaintiffs' motion seeking imposition of $9,000 on the

EOC Suffolk Delinquency claim against all the Defendants, jointly and severally.

■■■■■ As to the prejudgment interest, no federal statute specifies the rate at which prejudgment interest should be calculated, and courts in this district have utilized a number of different rates. *See Hollie v. Korean Air Lines Co., Ltd.*, 834 F.Supp. 65, 69 (S.D.N.Y.1993) (citing cases applying various rates). Most commonly, courts have borrowed the statutory post-judgment interest rate specified in 28 U.S.C. § 1961(a) in order to calculate prejudgment interest. *See Cioffi v. N.Y. Cmty. Bank*, 465 F.Supp.2d 202, 222 (E.D.N.Y.2006) ("In cases where the judgment is based on violations of both state and federal law, it is common practice in the Second Circuit to apply the federal interest rate pursuant to 28 U.S.C. § 1961(a).").

The version of 28 U.S.C. § 1961 in effect before December 2000 utilized the average 52–week United States Treasury bill rate. "Effective December 21, 2000, the statute [28 U.S.C. § 1961] was amended and the language 'the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills submitted immediately prior to' was replaced by 'the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System.'" *B.F. Goodrich Co. v. Murtha*, No. Civ. 387 CV 52PCD, 2004 WL 3249236, at *3 (D.Conn. Aug. 24, 2004) (quoting 28 U.S.C. § 1961, comments).

Using a blend of the rates of 28 U.S.C. § 1961 before and after the amendment, the Plaintiffs calculate the prejudgment interest for the period from June 30, 1998 to April 25, 2012 as $3,383.65. In opposition, the Defendants assert that the use of this blended rate requires a factual finding outside the purview of a Rule 60(a) motion. Alternatively, the Defendants contend that the Plaintiff cites to no statute or judicial precedent authorizing as proposed, a hybrid statutory federal prejudgment interest rate. Citing *Gatti v. Cmty. Action Agency of Greene Cnty., Inc.*, 263 F.Supp.2d 496, 525 (N.D.N.Y.2003), *aff'd sub nom. Gatti v. Cmty. Action of Greene Cnty., Inc.*, 86 Fed.Appx. 478 (2d Cir. 2004), the Defendants insist that a singular interest rate as provided in the amended statute should be used to calculate prejudgment interest. In *Gatti*, the court applied the § 1981 rate as amended to a prejudgment interest calculation notwithstanding the fact that the period for which interest was awarded overlapped the amendment.

That said, "[t]he Second Circuit has not addressed the precise issue regarding when and how a district court can amend or correct a judgment that ordered prejudgment interest but failed to fix and calculate such interest. The Court finds that Rule 60(b) provides the appropriate vehicle for doing so in this case." *Am. Underground Eng'g, Inc. v. City of Syracuse*, 5:00–CV–278 FJS/DEP, 2012 WL 3202853, at *2 (N.D.N.Y. Aug. 2, 2012). As described above, a party proceeding under one of the first three reasons under Rule 60(b) must move within a "reasonable time," not to exceed one year after the judgment at issue. "The one-year limitation period for Rule 60(b) motions is 'absolute.'" *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 466 F.3d 97, 100 (2d Cir.2006) (quoting *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir.2000)); *see also King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir.2002) (holding that appeal of a judgment adverse to the plaintiff does not toll the one-year limitations period for filing a Rule 60(b)(3) mo-

tion on the ground of fraud). Here, the renewed motion to correct the judgment pending before the Court was filed .on June 14, 2013—more than one year after the judgment entered on April 25, 2012— and is therefore untimely under Rules 59(e) and Rule 60(b). Accordingly, that part of the Plaintiff's motion seeking imposition of prejudgment interest for the EOC Suffolk Delinquency award is denied as untimely.

**B.** *As to the Amount Due Under the Prior Judgment*

■ The Plaintiffs also observe that the April 25, 2012 judgment fails to reflect the Court's earlier determination:

> upon a proper showing of notice to the judgment debtor CAAIG, of both this action and the petition for collection pursuant to CPLR 5227, the Court will, in its final order of judgment, include a directive that the defendants in this action turn over to the plaintiffs in the prior action, as judgment creditors, sums presently owed pursuant to the May 25, 2000 judgment.

*L.I. Head Start Child Dev. Servs., Inc.,* 634 F.Supp.2d at 316. It is undisputed that the Plaintiffs failed to commence a special proceeding pursuant to CPLR 5227. For this reason, the April 25, 2012 judgment did not include a directive as to the May 25, 2000 judgment.

■ CPLR 5227, in relevant part, provides:

> § 5227. Payment of debts owed to judgment debtor
>
> Upon a special proceeding commenced by the judgment creditor, against any person who is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute

and deliver any document necessary to effect payment; or it may direct that a judgment be entered against such person in favor of the judgment creditor.

The statute is designed "to ensure that the judgment debtor will have an opportunity to present any meritorious defense he may have to an order directing payment to the judgment creditor." *Vanderbilt Credit Corp. v. Chase Manhattan Bank, NA,* 100 A.D.2d 544, 545, 473 N.Y.S.2d 242 (2d Dept.1984).

The Defendants also assert that service of notice on EOC Nassau, as Administrator of the CAAIG Plan was defective because CAAIG is "long defunct and non-. existent ... [CAAIG] no longer had an administrator or sponsor. It had not existed for many years" (Def's Mem, at 6.) The Defendants further assert that notice of a CPLR 5227 proceeding was never served on them.

The Plaintiffs counter that a CPLR 5227 notice or proceeding requirement against CAAIG, after the passage of 15 years from the entry of judgment, would serve no statutory purpose because CAAIG is a long defunct· entity and it is clear that CAAIG has no meritorious defense. The Plaintiffs further contend that, assuming service of the Defendants in this action, as former administrators of the CAAIG plan, imputed service on behalf of CAAIG, the Court would face "the incongruous situation of having the judgment debtor CAAIG represented in a CPLR 5227 turnover proceeding by the very same defendants (administrators of CAAIG) in this action who are indebted to CAAIG as a result of the judgment entered against them in this action on April 25, 2012." (Plf's Reply Mem, at 4.). In other words, the Plaintiffs contend, "the [D]efendants here would be placed in the incompatible position of presenting the interests of CAAIG in the spe-

cial proceeding, while at the same time serving their own interests by seeking to evade paying the debt owed to CAAIG by means of a turnover order." (*Id.*).

■ To avoid that situation, the Plaintiffs request that the Court to exercise its discretion under CPLR 5240 to fashion relief to find that a special proceeding need not be commenced, as here, against a defunct entity. "CPLR 5240 grants the courts broad discretionary power to control and regulate the enforcement of a money judgment under article 52 to prevent 'unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.'" *Guardian Loan Co. v. Early*, 47 N.Y.2d 515, 519, 419 N.Y.S.2d 56, 392 N.E.2d 1240 (1979).

In this regard, the Plaintiffs rely on *Jones v. Palermo*, 105 Misc.2d 405, 432 N.Y.S.2d 288 (Sup.Ct.N.Y.1980). The *Jones* case involved a special proceeding to enforce a judgment under CPLR 5225. There, the court stated:

> Notwithstanding the statutory language which speaks of special proceedings, it would appear that in any event this court has the inherent power and ability to "fashion whatever remedies are required for the resolution of justiciable disputes and the protection of the rights of citizens." Recognizing that in the enforcement of money judgments, innumerable situations would arise where such power would be invoked, the Legislature created in CPLR 5240 "a broad supervisory power in the judiciary to deny, limit, condition, regulate, extend, or modify the use of any enforcement procedure. The establishment of this statute was intended to prevent unreasonable annoyance and abuse in the use of the provisions of article 52 of the CPLR ..."

In consequence, the institution of a special proceeding is unnecessary. *Jones*, 105 Misc.2d at 407–08, 432 N.Y.S.2d 288 (internal citations omitted).

However, the Court declines to determine the merits of the Plaintiffs' argument, even if doing so leaves the Plaintiffs without recourse as the May 2000 judgment. Properly viewed, the Plaintiffs' "request to modify the substantive holding of the [prior judgment], rather than to correct a clerical mistake, falls beyond the scope of Rule 60(a)." *Cantone & Co., Inc. v. Seafrigo*, 07 CIV. 6602(PKL), 2010 WL 1488014, at *3 (S.D.N.Y. Apr. 12, 2010). Under either Rules 59(e) or 60(b), that portion of the Plaintiffs' motion to dispense with the requirement of a CPLR 5527 proceeding is denied as untimely.

### C. *As to the Prejudgment Interest Amount on the Underfunding Claim Award*

■ The October 20, 2011 order of the Court stated, in pertinent part:

> Prejudgment interest on the unpaid contributions at the federal interest rate is awarded on these amounts from the end of each fiscal year, commencing with the fiscal year that ended on August 31, 1995 and the subsequent years that ended on August 31, 1996, August 31, 1997, and June 30, 1998, when the Plan was terminated.

*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 820 F.Supp.2d 410, 429 (E.D.N.Y.2011), *aff'd*, 710 F.3d 57 (2d Cir. 2013). However, the judgment entered on April 25, 2012 provided for "prejudgment interest" on the "Underfunding damages award of $832,945" as detailed in the October 2011 order. In this regard, the judgment failed to reflect the amount of prejudgment interest. The Plaintiffs now seek imposition of prejudgment interest in

the amount of $42,564.48 against all the Defendants, jointly and severally.

The cases have articulated two circumstances that preclude a Rule 60(a) correction to include prejudgment interest: (1) where the claimant has failed to request prejudgment interest at some time prior to filing the Rule 60(a) motion; or (2) if a finding of fact is required in order to determine the dates from which the interest should run. *Dudley*, 313 F.3d at 666 (holding that "Rule 60(a) is the proper vehicle for correcting a judgment in order to provide for an award of prejudgment interest where, among other things, governing law would make the interest award automatic or the district court clearly intended to make the interest award in its prior order"); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir. 1994); *Employers Mut. Cas. Co. v. Key Pharm.*, 886 F.Supp. 360, 361–62 (S.D.N.Y. 1995).

For example, in *Paddington Partners,* the court reviewed a situation much like the one before the Court: A party who was awarded summary judgment on a contract claim governed by New York law failed to ask for an award of prejudgment interest, and neither the magistrate judge nor the district judge considered the issue of prejudgment interest prior to entry of the judgment, which was silent with respect to interest. On motion by the interest-entitled party, the magistrate judge corrected the judgment, pursuant to Rule 60(a), to include the requisite award of prejudgment interest. The question before the Second Circuit was whether the magistrate judge abused her discretion by so amending the judgment.

The court first considered the circumstances under which an error relating to pre-decision interest can be corrected under Rule 60(a).

To be correctable under Rule 60(a), the absence of an award of pre-decision interest in a judgment must fail to reflect the actual intention of the court. An error in a judgment that accurately reflects the decision of the court or jury as rendered is not 'clerical' within the terms of Rule 60(a).

Even if a plaintiff includes a demand for pre-decision interest in its complaint, '[s]uch requests obviously may be overlooked or denied, and the absence of a provision for [such] interest in any of the court's prejudgment orders is entirely consistent with the hypotheses that the court either was unaware of the request or intended simply to deny it. In either case, the failure of [a] Judgment to award such interest is an accurate reflection of the court's decision,' and hence can not be corrected under Rule 60(a).

*Paddington Partners,* 34 F.3d at 1140 (internal citations omitted).

The court additionally held that an unintentional failure to award pre-decision interest was not a "clerical error" within the meaning of Rule 60(a) if it could not be corrected without a finding of fact as to the dates from which the interest should run. *See id.* at 1140–41. "Given that the magistrate judge and district judge had evidently never considered the issue of pre-decision interest prior to entry of judgment, and that the absence of an award of pre-decision interest could not be corrected without further findings of fact, the court held that the magistrate judge had abused her discretion in amending the judgment under Rule 60(a) to include an award of pre-decision interest." *Employers Mut.,* 886 F.Supp. at 364.

Similarly, in *Employer's Mut.,* the counter-claimants failed to request prejudgment interest in their answer or motion papers, and the court failed to address the

issue *sua sponte.* *See id.* at 361. In its denial of the Rule 60(a) motion, the court stated that "had [the counter-claimants] petitioned for pre-decision interest prior to the entry of judgment, we undoubtedly would have complied with New York law and awarded it." *Id.* at 364. The court also noted that unresolved issues of fact remained as to the date from which pre-judgment interest should run, which further precluded recourse under Rule 60(a). *See id.*

By contrast, in *Dudley,* the District Court clearly stated in its Rule 60(a) decision that it had intended to include pre-judgment interest at the time the original judgment was entered. Relying on the District Court's own expression of its intent as well as the plaintiff's previous request for prejudgment interest and the fact that such interest was statutorily mandated, the Second Circuit distinguished the case from *Paddington* and affirmed the District Court's decision to include prejudgment interest in its amended judgment.

"As in *Dudley,* there is no guessing to be done here. This Court intended to include prejudgment interest in the original judgment at the time it was entered. In addition, the plaintiff made previous requests for prejudgment interest and interest is statutorily mandated." *United States v. Sage,* 97 CIV. 1153(JFK), 2006 WL 2690004, at *2 (S.D.N.Y. Sept. 19, 2006); *see Arizona Premium Fin. Co., Inc. v. Employers Ins. of Wausau,* CV 00–7108 AKT, 2013 WL 3147017 (E.D.N.Y. June 19, 2013), citing *United Bank Ltd. v. Cosmic Int'l, Inc.,* 542 F.2d 868, 878 (2d Cir.1976) ("[S]ince CPLR § 5001 is obviously phrased in mandatory terms, New York law does not permit the trial court to exercise any discretion with regard to prejudgment interest determinations."); *Indu*

*Craft, Inc. v. Bank of Baroda,* 87 F.3d 614, 617 (2d Cir.1996).

Here, unlike in *Paddington Partners* and *Employer's Mut.,* the consolidated amended complaint "contained a clear, though brief, demand for the [prejudgment] interest." *Boyce v. Soundview Tech. Grp., Inc.,* 03 CIV. 2159(HB), 2005 WL 627780, at *2 (S.D.N.Y. Mar. 17, 2005). Accordingly, the Plaintiffs "provided the Court with sufficient notice of his request for prejudgment interest before he filed the instant motion, and there exists no factual dispute as to the date from which prejudgment interest should run." *Id.* Under these circumstances, and in the absence of an alternative calculation proffered by the Defendants, the Court accepts the Plaintiff's calculation of prejudgment interest of $42,564.58 and directs the Clerk to enter judgment in that amount against all the Defendants, jointly and severally.

### D. *As to Joint and Several Liability on the Underfunding Claim Award*

As stated above, in the October 20, 2011 decision, the Court rendered a judgment in favor the Plaintiffs against all of the Defendants on the underfunding claim in the total sum of $832,945. The Court allocated the sum as against the three participating agencies as follows: judgment was rendered in favor of the Plaintiffs against the Defendant EOC Nassau in the sum of $652,198; judgment was rendered in favor of the Plaintiffs against the Defendant EOC Suffolk in the sum of $110,782; and judgment was rendered in favor of the Plaintiffs against the Defendant Yonkers CAP in the sum of $69,967; plus costs.

The Plaintiffs contend that the Court's "failure" to find all the Defendants jointly and severally liable for the award of $832,945 resulted from "an unintentional

omission." However, where, as here, the Court specifically apportioned the money damages between the three agencies, the Court deems this contention unavailing. The Plaintiffs may be correct that joint and several liability is appropriate in the context of a breach of a fiduciary duty by multiple fiduciaries. *In re WorldCom, Inc. ERISA Litig.*, 339 F.Supp.2d 561, 568 (S.D.N.Y.2004) ("ERISA imposes joint and several liability on defendants"); *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16 (2d Cir.1991). Nonetheless, the Court finds that such a correction falls outside the scope of Rule 60(a) and, for the reasons explained above, is untimely. *Shamis v. Ambassador Factors Corp.*, 95 CIV. 9818 RWS, 2001 WL 25720 at *3–4 (S.D.N.Y. Jan. 10, 2001) ("Due to some unfortunately inartful phrasing, however, the joint and several liability was not also applied to the punitive damage award, which instead apportioned equal responsibility among the S. Roberts defendants as in the September 21, 2000 opinion ... The question of the appropriate apportionment of the punitive damage award will also be reconsidered here, pursuant to Rule 60(a), so that the Court may rectify the discrepancy in the October 27, 2000 judgment between the imposition of joint and several liability on the fraud claim and equal division of punitive damages."). Accordingly, that part of the Plaintiffs' motion to impose joint and several liability on the Defendants for the underfunding claim is denied.

### III. Conclusion

For the foregoing reasons, it is hereby: **ORDERED,** that the Plaintiffs' motion is granted in part to the extent the Clerk is directed to enter judgment in favor of the Plaintiffs against all of the Defendants, jointly and severally, (1) on the EOC Suffolk delinquency claim, the sum of $9,000.00; and (2) on the under-funding claim, prejudgment interest from September 1, 1995 to June 30, 1998 in the sum of $42,564.48; and it further

**ORDERED,** that the Plaintiffs' application for a bill of costs is referred to the Clerk; and it is further

**ORDERED,** that the Plaintiffs' motion is otherwise denied.

**SO ORDERED.**